Filed 9/11/14  Bingo Innovations of Cal. V. Shimazu CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| BINGO INNOVATIONS OF CALIFORNIA, INC. et al., | C073306 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2012-80001139-CU-WM-GDS) |
| v. | |
| STEPHANIE SHIMAZU et al., | |
| Defendants and Appellants. | |

Plaintiffs Bingo Innovations of California, Inc., Desert Hot Springs Lodge 2639 B.P.O.E., and Robert Rubio (collectively, Bingo Innovations) sued the members of the Gambling Control Commission of California (Stephanie Shimazu, Tiffany Conklin, Lauren Hammond, and Richard Schuetz) and that agency (collectively, the Commission), asserting it had a mandatory duty to process license applications for "remote caller bingo" sessions, despite a lack of or inadequacy of legislatively appropriated funds.  The trial court granted mandamus relief, and the Commission timely filed this appeal.

1

Although we normally confine our review to matters that were before the trial court, "courts have not hesitated to consider postjudgment events when legislative changes have occurred subsequent to a judgment [citations] or when subsequent events have caused issues to become moot." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) The parties agree in their briefs that the statute governing this dispute, Penal Code section 326.3[1] was substantially amended post judgment, and that another agency now has primary authority for processing these types of license applications, and has actually begun to do so. For reasons we shall explain in more detail *post*, it seems clear that the trial court's judgment would have differed had these circumstances manifested before the judgment was entered. Because the parties continue to dispute the *factual* significance of the statutory change, we shall reverse and remand with directions to the trial court to reopen the matter and conduct further proceedings consistent with this opinion.

## BACKGROUND

Bingo Innovations filed a petition for administrative mandamus and injunctive relief, alleging as follows: On July 1, 2008, the ability of charities to use electronic devices to conduct bingo games was terminated "in favor of exclusive use by Native-American reservation gaming facilities." A "Charity Bingo Mitigation Fund" was established "to 'ease the transition of Remote [Caller] Bingo,' which was made available to charities as a substitution for electronic machines." Section 326.3 sets forth the license and control scheme to oversee this form of gaming. However, "[o]n May 26, 2011, [the Commission] unilaterally purported to 'terminate the remote caller bingo program' and stopped reviewing license applications, effective June 7, 2011." Over 100 potential licensees "were prepared" to apply for licenses, but could not do so because of the

[1] Further undesignated statutory references are to the Penal Code.

2

Commission's action, although the Commission still polices bingo gaming by issuing cease-and-desist orders "to locally approved bingo sites which could not get [their] State license applications considered." Bingo Innovations asserted the Commission had a mandatory duty to process license applications.

Attached as an exhibit was a notice from the Commission dated May 26, 2011, stating its "funding authority for the Remote Caller Bingo Program, which is a loan from the Gambling Control Fund, and limited-term positions expire on June 30, 2011. Without that funding authority and those positions, the Commission cannot perform work related to the Remote Caller Bingo Program after that date. The Commission is not authorized under State law to use other funding sources to cover program costs. Due to the lack of funding, the Commission will be required to terminate its activities related to the Remote Caller Bingo Program effective July 1, 2011."

Also attached in a request for judicial notice was an opinion letter from the Legislative Counsel, dated February 8, 2012, concluding mandamus would lie to compel the Commission to process applications, notwithstanding the lack of appropriated funds, and also pointing to a provision of section 326.3 authorizing the Commission to "assess and collect reasonable fees and deposits as necessary to defray the costs of regulation and oversight" (§ 326.3, subd. (q)(3)(C)(iii)), which, in the Legislative Counsel's view, suggested the possibility that the program could become self-funding.

On May 24, 2012, the parties agreed to a stay that would maintain existing licenses--set to expire on May 31, 2012--in effect, in part because "section 326.3 may be substantially altered by legislative action during the current legislative session." The stay would dissolve on the earlier of completion of the litigation, a legislative change relieving the Commission of the duty to process license applications, or the appropriation by the Legislature of sufficient funds to enable such processing.

The Commission's opposition contended the lack of appropriated funds made it legally impossible for the Commission to process license applications. The Commission

3

contended: "Although there exists in the State Treasury a California Bingo Fund with a positive balance, the Commission cannot, by law, access those funds except to the extent moneys . . . are appropriated by the Legislature . . . ." "This is not a case of 'financial distress,' as that term is used in the mandate cases cited by Petitioners, nor is it a case in which the respondent has an alternative source of funds that could be used to perform the duties at issue--his is a case of legal impossibility caused by legislative inaction for which there is no judicial remedy." The Commission disagreed with the Legislative Counsel's suggestion that self-funding was possible, contending that while the Commission could collect fees, those fees were by statute required to be deposited into the California Bingo Fund (§ 326.3, subd. (q)(3)(B)) and thereafter could not be accessed absent a legislative appropriation.[2]

Copies of the relevant Budget Acts were attached to the opposition, and judicial notice was sought therefor. And a declaration from the Commission's Executive Director explained that a Budget Change Proposal for an appropriation from the California Bingo Fund was submitted for the 2011-2012 budget year, but was not granted. Because appropriations do not roll over, "On June 30, 2011, the Commission's funding authority for the regulation of remote caller bingo . . . expired, as did the authorization of limited-term positions to perform the associated workload."

At oral argument in the trial court, the Commission's counsel represented that because all Commission employees are paid via special funds, not general fund allocations, it would be unlawful to have any employees process remote caller bingo applications, absent a legislative appropriation.

The trial court's ruling rejected this view, finding: "The writ will not be directed to the Legislature or directly order any action by the Legislature. Respondent

---

[2] Generally, "[h]ow much money to collect and how to spend it are matters entrusted to the Legislature, not the judiciary." (*Grossmont Union High School Dist. v. State Dept. of Education* (2008) 169 Cal.App.4th 869, 886.)

4

Commission will be responsible for finding the money it needs to comply with the Court's orders, or for finding other means of compliance that do not require additional funding." The trial court did not explain how the Commission could lawfully comply with this writ, but evidently assumed it could assign employees to process bingo applications regardless of which special fund was paying them, without a specific legislative appropriation.

The judgment issuing the writ was filed on January 10, 2013, and the Commission timely filed its notice of appeal on March 7, 2013.

## POSTJUDGMENT EVENTS

According to a declaration filed with this court by the Commission's Executive Director, on July 1, 2013, $2,000 was appropriated by the Legislature for the remote caller bingo program, and an employee has been assigned to process license applications, for which the appropriation would allow approximately 45 work-hours for that employee, and that appropriation would "likely . . . be exhausted before the end of the 2013-2014 fiscal year on June 30, 2014."

Further, effective September 26, 2013, an amendment to section 326.3 transferred responsibility for processing licenses to the Bureau of Gambling Control (Bureau), and relegated the Commission to the role of approving or denying them "when they have been referred by the Bureau to the Commission for hearing at the Commission's regularly scheduled meetings."

Bingo Innovations' counsel filed a declaration in this court concurring that the Bureau now processes licenses, and seven new licenses had been issued as of March 6, 2014.

## DISCUSSION

As described by the Commission's Executive Director, the Legislature did, indeed, substantially revise the duties of the Commission regarding remote caller bingo. (See Stats. 2013, ch. 353, § 120.) The current version of section 326.3 vests the California

5

Department of Justice, which includes the Bureau, with primary authority over remote caller bingo. (§ 326.3, subds. (q), (t), (u), (w), (z)(2).) And the parties do not dispute that the Bureau has actually begun processing applications.

In these circumstances, the writ commanding the *Commission* to process applications must be reversed, regardless of any constitutional infirmity, simply because it commands the Commission to execute duties the Legislature has explicitly vested in another agency. (See *Callie v. Board of Supervisors* (1969) 1 Cal.App.3d 13, 18-19 [ruling on complaint for injunctive and declaratory relief regarding a type of gaming was moot by postjudgment change in local ordinance].)

The parties contend the new appropriation for the Commission, and the subsequent vesting of the Commission's mandate to process licenses in the Bureau, raise new factual issues. Because the parties agree on this point, and resolution of these factual issues is properly before the trial court rather than this court, we will remand with directions for the trial court to reopen the matter for further briefing on the new developments.

We decline the invitation by the parties to address the separation of powers question, because the factual matrix underlying this dispute has changed such that "any discussion of this point on our part would be premature adjudication." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 111 [declining to determine proportionate responsibility of codefendants, where judgment finding inverse condemnation liability was remanded for a new trial].) First, the trial court *may* decline to issue relief after remand, so the separation of powers issue may not arise again, making any ruling on our part academic. Second, "this approach is also consistent with the ' "well-established principle that this Court will not decide constitutional questions where other grounds are available and dispositive of the issues of the case." ' " (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230.)

Bingo Innovations, presenting "a red herring spawned below and dragged across the briefs on appeal" (*Caldo Oil Co. v. State Water Res. Control Bd*. (1996) 44

6

Cal.App.4th 1821, 1830), asserts the Commission is hostile to remote caller bingo and asks us to address the merits because otherwise the Commission will continue to spurn that lawful industry. This ignores three points. First, ad hominem attacks rarely persuade. (See *Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417, 1430.) Second, "It is presumed that official duty has been regularly performed." (Evid. Code, § 664; *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 548.) Third, it is not disputed that the new licenses have been issued, showing the Commission is acting on them.

Moreover, castigating the Commission's motives does not persuade us that we should adjudicate whatever remains of this dispute, as Bingo Innovations asks us to do. If the Commission is not complying with its new, limited role, that point can be litigated on remand. It would not be appropriate to litigate that factual issue on appeal.[3]

## DISPOSITION

The judgment granting the writ is reversed with directions to the trial court to reopen the matter for further proceedings consistent with this opinion. The parties shall bear their own costs. (Cal. Rules of Court, rule 8.278 (a)(5).)

          DUARTE         , J.

We concur:

      RAYE         , P. J.

      BUTZ         , J.

---

[3] Bingo Innovations' pending motion for judicial notice (filed March 21, 2014) is denied.